IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBRA ANN TEDROW, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Civil Action No. 2:16-293 |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | ) ) ) ) |
| Defendant. | ) ) ) ) |

AMBROSE, Senior District Judge

**OPINION**
**and**
**ORDER OF COURT**

**SYNOPSIS**

Pending before the Court are Cross-Motions for Summary Judgment. [ECF Nos. 9, 11]. Both parties have filed Briefs in Support of their Motions. [ECF Nos. 10, 12] After careful consideration of the submissions of the parties, and based on my Opinion set forth below, I am denying Plaintiff's Motion for Summary Judgment and granting Defendant's Motion for Summary Judgment.

**I. BACKGROUND**

Plaintiff has brought this action for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). On or about February 22, 2011, Plaintiff applied

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).

for DIB. [ECF No. 7-7, at 276-77, No. 7-8, at 308]. In her application, she alleged that since February 1, 2010, she had been disabled due to Crohn's disease, degenerative disc disease, arthritis, and depression. [ECF No. 7-8, at 308, 312] Her date last insured is June 30, 2014. Id. at 308.[2] The state agency denied her claims initially, and she requested an administrative hearing. [ECF No. 7-5, at 159-65]. Administrative Law Judge ("ALJ") Karen Kostol held a hearing on May 1, 2012, at which Plaintiff was represented by counsel. [ECF No. 7-3, at 84-120]. Plaintiff appeared at the hearing and testified on her own behalf. Id. A vocational expert also was present at the hearing and testified. Id. at 112-19. In a decision dated May 14, 2012, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under the Act. [ECF No. 7-4, at 135-50].

Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on August 28, 2013, the Appeals Council granted Plaintiff's request for review. [ECF No. 7-4, at 154-57; No. 7-5, at 215; No. 7-8, at 356-58]. The Appeals Council remanded the matter to the ALJ with instructions to consider the opinion of Plaintiff's primary care physician and to explain the weight given to such treating source opinion evidence; to give further consideration to Plaintiff's RFC; and, if warranted by the expanded records, to obtain supplemental evidence from a vocational expert. [ECF No. 7-4, at 156-57].

On April 14, 2014, ALJ Kostol held a second hearing, at which Plaintiff was represented by counsel. [ECF No. 7-3, at 41-82]. Plaintiff appeared at the hearing and testified on her own behalf. Id. A different vocational expert was present at the hearing and testified. Id. at 70-81. In a decision dated May 16, 2014, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled under

---

[2] To receive DIB, Plaintiff must establish that she became disabled prior to June 30, 2014, the date on which her insured status expired, or "date last insured." 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. § 404.131(a).

2

the Act. [ECF No. 7-2, at 22-35]. Plaintiff requested review of the ALJ's determination by the Appeals Council, and, on January 12, 2016, the Appeals Council denied Plaintiff's request for review. [ECF No. 7-2, at 1-7]. Having exhausted all of her administrative remedies, Plaintiff filed this action.

The parties have filed Cross-Motions for Summary Judgment. [ECF Nos. 9 & 11]. The issues are now ripe for my review.

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. Allen v. Bowen, 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. Palmer v. Apfel, 995 F. Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. See 5 U.S.C. § 706.

To be eligible for social security benefits, the plaintiff must demonstrate that she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to

3

last for a continuous period of at least 12 months. 42 U.S.C. § 1382(a)(3)(A); Brewster v. Heckler, 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. § 404.1520. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent her from performing her past relevant work; and (5) if the claimant is incapable of performing her past relevant work, whether she can perform any other work which exists in the national economy, in light of her age, education, work experience and residual functional capacity. 20 C.F.R. § 404.1520. The claimant carries the initial burden of demonstrating by medical evidence that she is unable to return to her previous employment (steps 1-4). Dobrowolsky, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). Id.

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. Podedworny v. Harris, 745 F.2d 210, 221 (3d Cir. 1984).

### B.   **WHETHER SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ's RFC FINDING**

The ALJ found that Plaintiff had severe impairments, including degenerative disc disease of the cervical spine; chronic low back pain; Crohn's disease; bilateral carpal tunnel syndrome and cubital tunnel syndrome; anxiety not otherwise specified; and major depressive disorder. [ECF No. 7-2, at 24]. She then found that Plaintiff's impairments or combination of impairments

4

did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 24-27. The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except that she can never climb ladders, ropes, or scaffolds; can occasionally perform other postural activities; must avoid concentrated exposure to extreme cold, wetness, humidity, and excessive vibration; and must avoid all exposure to hazards, such as dangerous moving machinery and unprotected heights. In addition, the ALJ limited Plaintiff to simple, routine, and repetitive tasks in a low stress job, defined as having only occasional decision-making, occasional changes in the work setting, and no strict production quotas. She also was capable of occasional interaction with the general public, coworkers, and supervisors. [ECF No. 7-2, at 27-33]. The ALJ ultimately concluded that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform and, therefore, that Plaintiff was not disabled within the meaning of the Act. Id. at 33-34.

Plaintiff does not contest the ALJ's findings with respect to her physical impairments. [ECF No. 10, at 3 n.2]. Rather, Plaintiff argues the ALJ's findings are deficient because she did not appropriately evaluate the medical opinions and evidence regarding her mental impairments. Id. at 15-19. Specifically, Plaintiff contends that the ALJ improperly rejected the opinion of her treating psychiatrist, Melissa Albert, M.D., that Plaintiff has marked limitations in her ability to perform several mental work-related functions, without citing to contradictory medical or other evidence. Id.

On or about February 11, 2014, Dr. Albert completed a "Psychiatric/Psychological Impairment Questionnaire" regarding Plaintiff. [ECF No. 7-21, Ex. 23F]. On the form, Dr. Albert opined that Plaintiff was "markedly limited" in seven out of twenty work-related mental activities,

including her ability to: maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; sustain ordinary routine without supervision; work in coordination with others without being distracted by them; complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept and respond appropriately to criticism from supervisors; and get along with co-workers or peers without distracting them or exhibiting behavioral extremes. Id. Dr. Albert opined that Plaintiff was mildly or moderately limited in the remaining thirteen mental activities. Id.[3] The ALJ gave Dr. Albert's opinion some weight but discounted her "marked" findings. In so doing, the ALJ stated that the

> marked findings are inconsistent with the treatment records because the mental status examinations do not demonstrate any significant findings. In addition, the claimant has shown improvement with treatment, despite not being fully compliant with medication. Further, the claimant's appearance is consistently appropriate, she has one good friend, and she has no history of aggression with others.

[ECF No. 7-2, at 32].

After careful review of the record, applicable regulations, and relevant case law, I disagree that the ALJ erred in discounting Dr. Albert's findings of marked restrictions in the seven areas set forth above. The amount of weight accorded to medical opinions is well-established. Generally, the ALJ will give more weight to the opinion of a source who has examined the claimant than to a non-examining source. 20 C.F.R. § 404.1527(c)(1). In addition, the ALJ generally will give more weight to opinions from a treating physician, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence

---

[3] The questionnaire defines "markedly limited" as "effectively precludes the individual from performing the activity in a meaningful manner." It defines "moderately limited" as "significantly affects but does not totally preclude the individual's ability to perform the activity," and "mildly limited" as "does not significantly affect the individual's ability to perform the activity." [ECF No. 7-21, Ex. 23F].

that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  Id. § 404.1527(c)(2).  If the ALJ finds that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [of] record," she must give that opinion controlling weight.  Id.  Unless a treating physician's opinion is given controlling weight, the ALJ must consider all relevant factors that tend to support or contradict any medical opinions of record, including the patient/physician relationship; the supportability of the opinion; the consistency of the opinion with the record as a whole; and the specialization of the provider at issue.  Id. § 404.1527(c)(1)-(6).  "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion."  Id. § 404.1527(c)(4).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'"  Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)).  However, "where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence.  Id.  Similarly, under 20 C.F.R. § [404.1527]([c])(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

Becker v. Comm'r of Soc. Sec. Admin., 403 F. App'x 679, 686 (3d Cir. 2010).  The ultimate issue of whether an individual is disabled within the meaning of the Act is for the Commissioner to decide.  Thus, the ALJ is not required to afford special weight to a statement by a medical source that a claimant is "disabled" or "unable to work."  See 20 C.F.R. § 404.1527(d)(1), (3); Dixon v.

Comm'r of Soc. Sec., 183 F. App'x 248, 251-52 (3d Cir. 2006) ("[O]pinions on disability are not medical opinions and are not given any special significance.").

Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505 (3d Cir. 2009). The ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981). In other words, the ALJ must provide sufficient discussion to allow the court to determine whether any rejection of potentially pertinent, relevant evidence was proper. Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 203-04 (3d Cir. 2008).

Here, the ALJ did not reject Dr. Albert's opinion outright, but, rather, discounted Dr. Albert's findings of marked limitations because she found they were inconsistent with the totality of the record, including Dr. Albert's own treatment records. [ECF No. 7-2, at 32]. This is an appropriate reason for declining to give a treating physician's opinion controlling weight. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); 20 C.F.R. § 404.1527. Further, substantial record evidence supports the ALJ's findings in this regard. For example, although Dr. Albert's records consistently show a depressed mood and mood congruent affect, the ALJ correctly notes that the mental status examinations do not reflect any other significant findings. [ECF No. 7-2, at 30]. To the contrary, under Dr. Albert's care, the records reflect, inter alia, that Plaintiff demonstrated appropriate appearance, language, and speech; cooperative demeanor; clear and alert consciousness; orientation to person, place, time, and situation; logical thought processes; intact and average thought associations; no suicidal or homicidal ideation; unremarkable thought content; intact memory, reasoning, and abstract thinking; average knowledge; fair judgment; and reasonable insight. [ECF No. 7-2, at 30 (citing Ex. 22F)]. The ALJ also cited evidence in the

8

treatment records showing that Plaintiff showed improvement in her condition with treatment and medication, despite not being fully compliant with such medication. Id. (citing Exs. 12F, 16F, 22F). Among other things, the ALJ cited Plaintiff's GAF scores, which ranged from 50, indicating serious symptoms, to 58, indicating only moderate symptoms. Id. at 31 (citing Exs. 12F, 16F, 20F, 22F). The ALJ correctly observed that the lowest GAF scores were assessed early in Plaintiff's treatment, and showed steady improvement over time. Id. Dr. Albert herself never gave Plaintiff a GAF score that fell below the moderate range, and she assigned Plaintiff's highest GAF score of 58 (on the higher end of the moderate range) on December 31, 2013, Plaintiff's last visit before Dr. Albert completed the February 2014 questionnaire at issue. [ECF Nos. 7-19 (Ex. 16F), 7-20 (Ex. 20F), 7-21 (Ex. 22F)].[4] The ALJ also cited Plaintiff's activities of daily living as evidence that she had a greater mental functional capacity than alleged. [ECF No. 7-2, at 31].

Ultimately, the responsibility for determining a claimant's RFC rests with the ALJ. 20 C.F.R. §§ 404.1527(d); 404.1546; Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011) ("The ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."). Furthermore, the ALJ is charged with formulating the RFC based on *all* of the relevant evidence including all medical evidence or otherwise. 20 C.F.R. § 404.1545(a); see also Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir.

---

[4] The GAF scale is used by clinicians to report an individual's overall level of functioning. See Cainglit v. Barnhart, 85 F. App'x 71, 74-75 (10th Cir. 2003). A GAF of 21-30 indicates behavior that "is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment . . . OR inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)." See American Psychiatric Assoc. Diagnostic and Statistical Manual of Mental Disorders (4th ed., Text Rev. 2000) ("DSM-IV-TR"). A GAF of 31-40 indicates "some impairment in reality testing or communication . . . OR major impairment in several areas such as work or school, family relations, judgment, thinking, or mood." Id. A GAF of 41-50 denotes "serious symptoms (e.g., suicidal ideation . . . ) . . . OR any serious impairment in social, occupational, or school functioning." Id. A GAF from 51-60 indicates "moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." Id. A GAF from 61-70 reflects "some mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . , but generally functioning pretty well, has some meaningful relationships." Id.

2006) ("There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC. Surveying the medical evidence to craft an RFC is part of the ALJ's duties."). ALJs are not required to accept medical opinions wholesale, especially, as here, when certain portions internally conflict. Johnson 529 F.3d at 202. In this case, there was substantial evidence of record to support the ALJ's finding that Plaintiff could perform sedentary work except as set forth in the RFC. Additionally, the ALJ properly considered Plaintiff's testimony, her course of treatment, and her activities of daily living in reaching her RFC finding. [ECF No. 7-2, at 27-33]. As set forth above, the ALJ properly discounted Dr. Albert's opinion evidence as to marked limitations as not fully consistent with Plaintiff's longitudinal medical records. Id. at 32; 20 C.F.R. § 404.1527. Based on the above, I am able to make a meaningful review. The ALJ's RFC generously accounted for the limitations established by the evidence of record and was supported by substantial evidence. Accordingly, I find that the ALJ did not err in formulating Plaintiff's RFC with regard to her mental limitations.

### III. CONCLUSION

For all of the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DEBRA ANN TEDROW, )
        Plaintiff, )
vs. ) Civil Action No. 2:16-293
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security,[1] )
        Defendant. )

AMBROSE, Senior District Judge

**ORDER OF COURT**

AND NOW, this 1st day of March, 2017, after careful consideration of the submissions of the parties and for the reasons set forth in the Opinion accompanying this Order, it is ordered that the decision of the ALJ is affirmed and Plaintiff's Motion for Summary Judgment [ECF No. 9] is DENIED and Defendant's Motion for Summary Judgment [ECF No. 11] is GRANTED.

                          BY THE COURT:

                          /s/ Donetta W. Ambrose
                          Donetta W. Ambrose
                          U.S. Senior District Judge

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is automatically substituted as the Defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).